WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Chapter 11 Trustee*
156 West 56th Street
New York, New York 10019
(212) 237-1000
Attorneys appearing: Alan Nisselson (anisselson@windelsmarx.com)
Leslie S. Barr (lbarr@windelsmarx.com)
Derek Etheridge (detheridge@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>BIG APPLE VOLKSWAGEN, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-11388 (JMP) |

**ORDER APPROVING SALE PROCEDURES AND TERMS,
INCLUDING BREAK-UP FEE, FOR THE SALE OF THE DEBTOR'S AUTOMOBILE
DEALERSHIP ASSETS, SCHEDULING THE SALE AND A HEARING FOR
APPROVAL OF THE SALE, AND GRANTING OTHER RELATED RELIEF**

_____

Upon the motion dated June 27, 2011 of Alan Nisselson ("**Trustee**"), trustee for the chapter 11 estate of Big Apple Volkswagen, LLC (the "**Debtor**"), for entry of an Order approving sale procedures and terms, including break-up fee, for the sale of Debtor's automobile Dealership Assets (as defined in the Motion) (the "**Sale**"), scheduling the Sale and a hearing for approval of the Sale (the "**Sale Approval Hearing**"), and granting other related relief (the "**Sale Procedures Motion**");

And the Trustee having identified in the Sales Procedures Motion the offer from Lash Auto Group I LLC (the "**Proposed Purchaser**") in the amount of $717,000.00 without the contingency of any financing (the "**Proposed Purchase Price**") as the highest or best offer to date, as set forth in the Asset Purchase Agreement (the "**APA**") that he entered into the APA with the Proposed Purchaser subject to higher or better offers and Bankruptcy Court approval, pursuant to the terms and conditions of sale procedures described below;

And the Trustee having caused service of the Sale Procedures Motion and/or notice thereof to be filed with the Court and served upon Debtor's counsel of record, all known creditors and parties in interest listed by the Debtor in this case, the Office of the U.S. Trustee, counsel for VW Credit, Inc. ("**VCI**"), counsel for Volkswagen of America ("**VOA**"), counsel for the Landlord of the Debtor's business premises, counsel for the Proposed Purchaser, counsel for all Competing Offerors (defined below), and each Competing Offeror not represented by counsel identified by the Trustee, as evidenced by the Affidavits of Service on file with the Court, which notice constitutes due and sufficient notice of the Sale Procedures Motion and the Hearing under the circumstances of this case;

And upon all of the proceedings had before the Court, and the representations made at the Hearing in connection with the Sale Procedures Motion; and the Court having determined on the record of the Hearing that the relief sought in the Sale Procedures Motion should be granted as set forth below, and therefore having overruled any objection made to the relief sought in the Sale Procedures Motion; and good and sufficient cause appearing therefore, and after due deliberation;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. The Court has jurisdiction over the Sale Procedures Motion under 28 U.S.C. §§ 157 and 1334 and the standing order of reference to bankruptcy judges dated July 10, 1984 (Acting Chief Judge R.J. Ward). This is a core proceeding pursuant to 28 U.S.C § 157(b). Venue of this case and proceeding is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409. The relief sought in the Sale Procedures Motion is based upon sections 102(1), 105(a), 363 and 365 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6007, 9006(c), and 9007 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**") and the Court's Administrative Order No. M-383 dated November 18, 2009 titled *In the Matter of Adoption of Amended Guidelines for the Conduct of Asset Sales*.

B. For the reasons set forth in the Sale Procedures Motion, the Debtor's assets should be liquidated promptly in order to maximize their value.

C. Notice of the Sale Procedures Motion, the Hearing, and all proceedings thereon, as evidenced by the affidavit of service thereof filed with the Court, was proper and appropriate under the circumstances.

**NOW THEREFORE, based upon the Sale Procedures Motion, the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, it is hereby ORDERED that:**

1. The Sale Procedures Motion is granted as set forth below.

2. On or before two weeks after entry of this Sale Procedures Order, the Trustee shall cause to be served and published notice of the Sale and of the Sale Approval Hearing. The Trustee is authorized to publish notice of the Sale at least once in the weekly trade publication titled *The Auto News* and in the classified section of its online publication.

3. The Sale is subject to higher or better offers, and the following constitute the procedures by which any competitive bidder may make a higher or better offer (the "**Sale Procedures**"):

    (a) Persons other than the Proposed Purchaser who satisfy the qualification requirements described below shall be defined as a "**Competing Offeror**". The Dealership Assets will be sold to any party who has made the highest or best offer or offers in the Trustee's sole discretion that comply with the following:

(b) No property shall be deemed to be sold unless (i) the Bankruptcy Court has first entered an Order ("**Sale Approval Order**"), approving the Trustee's recommendation of the highest or best offer(s), (ii) VOA has accepted and approved the Highest Offeror (defined below) as a franchisee; and (iii) the closing of the transfer of title to any such property is in fact consummated.

(c) In order to participate in the bidding process, each person or entity interested in becoming a Competing Offeror (a "**Potential Bidder**") must deliver to the Trustee by no later than four weeks after entry of this Sale Procedures Order, an executed VOA Non-Disclosure Agreement (the "**Non-Disclosure Agreement**") in form acceptable to VOA. Provisions of such form of the Non-Disclosure Agreement with regard to nondisclosure and return of confidential information will not change from the form of Non-Disclosure Agreement entered by the Proposed Purchaser without the consent of VOA, which will not be unreasonably withheld or delayed. VOA may modify or accept modifications of other provisions of the form of Non-Disclosure Agreement entered with a Potential Bidder, so long as such provisions as modified are not materially less favorable to the Debtor's estate.

(d) Within one business day of receipt by VOA of the executed Non-Disclosure Agreement, all Potential Bidders will receive a bid qualification package consisting of (i) the Sale Procedures Order; (ii) financial and sale data for the Debtor; (iii) a list of the Tangible Assets; (iv) the APA; (v) VOA Dealer Candidate Application Overview and Requirements, (vi) VOA's five-year planning volumes and vehicle-in-operation count expectations for the Dealership,

a/k/a "Performance Standards"; (vii) VOA Facility and Image Requirements, a/k/a "Facility Standards"; (viii) VOA Dealer Agreement Application and related forms (the "**Dealer Application**"); (ix) VOA Statement of acceptable dealership location area; and (x) VOA Dealer Agreement, including Standard Provisions, Operating Standards, Corporate Identity Supplement, and a form Facilities Addendum (items (i) through (x) together are referred to as the "**Bid Qualification Package**").

(e) Potential Bidders shall have seven days after receipt of the Bid Qualification Package to submit the Dealer Application to the Trustee and VOA.

(f) Upon receipt of the Dealer Applications, VOA shall review them and may interview applicants. When its review is completed, VOA will promptly advise the Trustee of which Potential Bidders meet VOA's criteria based upon their respective bids, Dealership Applications and interview, if applicable. The Trustee will then determine the pool of Competing Offerors, notify them, and advise them of their right to participate at the Sale in competitive bidding for the Dealership Assets.

(g) Within one business day of notification, any Competing Offeror shall deliver to the Trustee a certified check or bank check, letter of credit or other cash equivalent made payable to the Trustee in the amount equal to $75,000.00 (the "**Deposit**"), which amount(s) shall serve as good faith deposit(s) against payment of the purchase price(s) by such Competing Offeror selected by the Trustee and found by the Bankruptcy Court to have made the highest or best offer(s) (including the Proposed Purchaser each, a "**Highest Offeror**").

(h) Bids submitted by Competing Offerors at the Sale (each, a "**Competing Bid**") will (i) be made on substantially the same terms as the APA, (ii) not be contingent upon financing to consummate a sale or upon the outcome of unperformed due diligence, and (iii) provide that the consideration to be paid under the offer shall be in cash or cash equivalent at closing.

(i) Notwithstanding anything to the contrary contained herein, the Trustee reserves the right, in his sole discretion, to withdraw any or all of the Dealership Assets from the Sale if the circumstances indicate that the Debtor's estate would benefit by such withdrawal(s).

(j) As set forth in the APA, each initial Competing Bid is required to be in an amount not less than $748,510.00 (comprised of the Proposed Purchase Price, plus the initial overbid in the amount equal to the sum of 103% of the Proposed Purchase Price plus $10,000.00) with bidding increments of $10,000.00 thereafter.

(k) Any Competing Offeror that in good faith requests of the Trustee in writing an opportunity to conduct due diligence to prepare and submit an offer, may be permitted upon reasonable notice, and at the Competing Offeror's sole risk, to have access to the Dealership Premises or any of the Dealership Assets during normal business hours, unless otherwise agreed. Expenses incurred by a Competing Offeror concerning any due diligence, such as title reports or environmental inspections, shall be the sole responsibility of such Competing Offeror.

(l) The Trustee shall conduct the Sale at the offices of Windels Marx Lane & Mittendorf, LLP, 156 West 56th Street, 22nd Floor, New York, New York 10019

on October 5, 2011 at 10:00 a.m. (one business day before the Sale Approval Hearing). The Trustee shall inform all Competing Offerors of his determinations of the highest or best Competing Bid(s) for the Dealership Assets at the Sale.

(m) Should the Highest Offeror's offer (the "**Successful Bid**"), or the next highest or best bid (the "**Back-Up Bid**"), be submitted by a Competing Offeror other than the Proposed Purchaser, and should the proponent of the Successful Bid (or the Back-Up Bid), other than the Proposed Purchaser, consummate the transaction proposed by the APA as approved by the Court, then the Break-Up Fee shall become due and payable to the Proposed Purchaser, upon closing of the transaction contemplated by the Successful Bid (or the Back-Up Bid), solely from sales proceeds, in an amount equal to its reasonable expenses incurred in connection with the Sale process or 2% of the Successful Bid or the Back-Up Bid, as the case may be.

(n) All offers shall remain irrevocably open and subject to acceptance by the Trustee until such time as determined by the Trustee, but no longer than until a closing takes place. Accordingly, if a closing with any Highest Offeror is not timely concluded, the Trustee shall be authorized, but not required, without further Order of the Court to promptly conclude the transactions with the next Highest Offeror in accordance with the terms of the next highest or best Competing Offer (provided the next highest or best Competing Offer otherwise complies with the Sale Approval Order). The Trustee will retain the Deposits delivered by the Highest Offeror and the holder of the Back-Up Bid pending a closing.

(o) On October 6, 2011 at 10:00 a.m. (the next business day after the Sale), the Court

will hold a hearing (the "**Sale Approval Hearing**") in Courtroom 601 at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, to consider entering the Sale Approval Order pursuant to Bankruptcy Code § 363 (and section 365 if applicable), which order may, among other things, approve the Sale, confirm the purchaser is a good faith purchaser entitled to the protection of Bankruptcy Code § 363(m), provide that the Sale is free of all liens, claims, interests and encumbrances, and direct that the appropriate agencies that receive documents or instruments for recording discharge all liens and encumbrances of record on the Dealership Assets and accept assignments from the Trustee to the successful offeror, for recording for all purposes, subject to payment of applicable taxes or transfer fees, if any, by the successful offeror.

(p) The Sale Approval Order will direct any Highest Offeror to promptly close the transactions for the purchase of the Dealership Assets for which such Highest Offeror made the highest or best Competing Offer(s) no later than five (5) days after entry of the Sale Approval Order, TIME BEING OF THE ESSENCE (the "**Closing Date**"), or dispense with the stay of closing under Bankruptcy Rule 6004(h).

(q) In the event that any Highest Offeror, including the Proposed Purchaser, fails to perform any obligation under its Agreements with the Trustee, if any, or the Sale Approval Order, which failure results in a failure to close the transactions contemplated thereby, such Highest Offeror shall forfeit to the Trustee the full amount of its Deposit as liquidated damages.

(r)     The Sale Approval Order will provide that the Trustee will convey his right, title and interest in and to the Dealership Assets free and clear of all liens, claims interests and encumbrances, unless otherwise agreed. Any Highest Offeror will expressly acknowledge and agree that any warranties of any kind or nature whatsoever, express or implied, concerning the Dealership Assets, including, without limitation, any warranties as to title, suitability for any purpose, merchantability and any other warranties or representations as to the ownership, physical condition, quality or quantity of them, will be and are expressly disclaimed. Each Competing Offeror will acknowledge and agree that it has inspected the Dealership Assets and will accept them in their present condition at closing "AS IS," "WHERE IS," and "with all faults".

(s)     By participating in the Sale proceedings, each Competing Offeror will be deemed to have (i) acknowledged that it has or had an opportunity to review the Dealership Assets and all other pertinent information concerning them, and (ii) represented that it has read and understood the Sale Procedures, and has the financial ability to pay the highest price it offers.

(t)     The Trustee has the right, in his sole discretion, to accept or reject any Competing Offer, subject to the determination of the Court.

(u)     In the event that the Trustee, for any reason, does not consummate the Sale or execute and deliver the closing documents, his sole liability to any Highest Offeror will be for the return of its Deposit without interest.

(v)     Any leases encumbering any of the Dealership Assets shall be terminated as of the Closing Date, if not otherwise assumed and assigned.

(w) The Highest Offeror shall also pay at the closing all taxes incurred by the transfer of the Dealership Assets from the Estate to the purchaser(s), including any county, state, or other transfer or sales taxes.

(x) If the Sale to the Highest Offeror is terminated at or before the Closing Date, the Trustee will proceed to close the Sale with the next highest or best offer for the Sale. Each Competing Offeror shall be required to leave its Deposit with the Trustee until the Closing Date, at which time the Deposit will be returned to such offeror with interest or investment income earned thereon, if any, if the Trustee closes with the Proposed Purchaser or another Competing Offeror as provided herein; *provided*, *however*, that any offeror with whom the Trustee is entitled to close the Sale pursuant to this provision will forfeit its deposit (together with all interest or investment income earned thereon) to the Trustee as liquidated damages if such offeror is the highest or best offer for purposes of closing the Sale and such offeror fails to close the Sale for any reason other than as specified herein.

4. The Trustee's proposed Sale of the Debtor's Assets under the sale terms meets the requirements of the Bankruptcy Code and the standards for approval of asset sales under the applicable rules and Administrative Order No. M-383 of this Court.

5. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Sale Procedures Order.

Dated: New York, New York
July 13, 2011

    *s/ James M. Peck*
Honorable James M. Peck
United States Bankruptcy Judge